UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL M. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:24-cv-00242-SEP |
| ) | |
| LOVE'S TRAVEL STOPS & ) | |
| COUNTRY STORES, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is pro se Plaintiff Daniel Carter's Second Amended Complaint, Doc. [12]. After review of the Second Amended Complaint, the Court requires Plaintiff to show cause why this matter should not be dismissed for lack of jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

### BACKGROUND

The facts, as alleged, are as follows: On December 21, 2022, Plaintiff was driving from Wisconsin to Texas in Plaintiff's Peterbilt semi-trailer truck when he pulled into a QuikTrip gas station in Rolla, Missouri. *See* Doc. [1] at 7. After fueling up, Plaintiff's truck would not start, so he called the Love's Travel Stop in Rolla for assistance. *Id.* Love's sent out a mechanic who diagnosed a problem with the starter. Over the next four days, the repair of Plaintiff's truck was repeatedly delayed, and Plaintiff ended up sleeping in a rental car with his family. *Id.* at 7-11.

On Christmas Day, Love's told Plaintiff that the starter was replaced, but after Plaintiff started the truck, it would not shift into gear. *Id.* at 9. When Plaintiff noted that the truck did not have that problem until Love's tried to repair the starter, one of the mechanics "approached Mr. Carter violently" and "spit on Mr. Carter, as he tried to take Mr. Carter's phone out of his hands for recording." *Id.* at 10. Plaintiff alleges that he "heard one of Love's Mechanics scream[ ] out 'white power' at least twice." *Id.*

After the altercation, Love's called the Rolla Police Department (RPD) to have Plaintiff removed. *Id.* Plaintiff's truck was towed by Big Boy Towing and Recovery to their tow yard, and he was denied access to his truck by the RPD and Big Boy. *Id.* Later, Big Boy allowed Peterbilt to pick up the truck. According to Plaintiff, investigations and diagnostic testing by Peterbilt and Progressive Insurance revealed that Love's faulty repair job caused his truck's problems. *Id.* at 10-11.

Invoking the Court's diversity jurisdiction, Plaintiff filed this suit against "Love's Travel Stops & Country Stores #341," and Love's employees Grace Morales, Josh Jones, and two John Doe mechanics.  Plaintiff sues for negligence, breach of contract, and assault and battery.  *See* Docs. [1], [4].  For relief, he asks for "compensatory damages, including, but not limited to, lost earnings, in such amounts as reasonably compensate his losses, and damages for emotional distress," and punitive damages.  Doc. [1] at 11.  Plaintiff claims $160,000 in lost wages—his "average gross income"—$91,000 in damages to his truck, and $30,000 in damages to his trailer. *Id*. at 3.  Receipts attached to the Complaint showed expenses of approximately $8,000.  *See* Docs. [1-2], [1-4], [1-6].

On July 3, 2024, the Court ordered Plaintiff to show cause why his Complaint should not be dismissed for lack of subject matter jurisdiction.  Doc. [10].  The Court noted that Plaintiff failed to identify the citizenship of the named Defendants and failed to sufficiently allege that more than $75,000 was in controversy.  Rather than reply to the Court's Order, Plaintiff filed a Second Amended Complaint seeking to add a Title II race discrimination claim in public accommodations.  *See* Doc. [12].  The Court now reevaluates its jurisdiction based on Plaintiff's Second Amended Complaint.

## LEGAL STANDARD

"Subject matter jurisdiction refers to the court's power to decide a certain class of cases." *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006).  "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case."  *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990).  As such, the issue of subject matter jurisdiction may be raised at any time, by any party or the Court.  *Gray v. City of Valley Park*, 567 F.3d 976, 982 (8th Cir. 2009).

The Court has jurisdiction to hear cases involving the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331, and the Court can hear cases where diversity jurisdiction exists under 28 U.S.C. § 1332.  *See Auto-Owners Ins. Co. v. Tribal Ct. of Spirit Lake Indian Rsrv.*, 495 F.3d 1017, 1020 (8th Cir. 2007) ("[W]e find neither diversity of citizenship nor federal question jurisdiction applicable and conclude that subject matter jurisdiction is lacking."). Under 28 U.S.C. § 1332, the Court has diversity jurisdiction over cases where the parties are citizens of different states and where the amount in controversy is more than $75,000.  The Court

must "decide what the amount in controversy is from the complaint itself." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961).

## DISCUSSION

Plaintiff fails to establish either federal question jurisdiction or diversity jurisdiction in the Second Amended Complaint. He will be granted one more opportunity to establish diversity jurisdiction before his lawsuit is dismissed.

**I.     Plaintiff has not established federal question jurisdiction because he failed to properly exhaust his Title II claim.**

Federal district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim "arises under" federal law depends on the contents of the well-pleaded complaint. *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). But a "court does not obtain subject matter jurisdiction just because a plaintiff raises a federal question in his or her complaint." *Biscanin v. Merrill Lynch & Co.,* 407 F.3d 905, 907 (8th Cir. 2005) (citing *Hagans v. Lavine*, 415 U.S. 528, 537-38 (1974)). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Id*. Because the case is at the initial review stage and there is no record beyond the Second Amended Complaint, the Court determines "whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the plaintiff." *Biscanin*, 407 F.3d at 907 (citations omitted). The Court finds that Plaintiff's Title II claim is patently meritless and cannot trigger subject matter jurisdiction because Plaintiff failed to properly exhaust his administrative remedies.

Title II of the 1964 Civil Rights Act is far-reaching, containing a "sweeping prohibition of discrimination" in public accommodations. *Daniel v. Paul*, 395 U.S. 298, 301 (1969). The law guarantees "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation." 42 U.S.C. § 2000a(a). Section "2000a-3(c) requires notice to the state or local authority as a prerequisite to filing a civil action when a state or local law prohibits discrimination in public accommodations and provides a remedy for such practice." *Bilello v. Kum & Go, LLC,* 374 F.3d 656, 659 (8th Cir. 2004).

Plaintiff claims to have exhausted his administrative remedies by writing to the Missouri Attorney General's Office. Doc. [12] at 6. That is not the appropriate means to exhaust

3

administrative remedies under Title II. The notice requirement of § 2000a-3(c) provides as follows:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

Plaintiff does not allege that he provided any notice or filed any complaint with the Missouri Commission on Human Rights (MCHR), the entity that investigates discrimination claims in Missouri, which is "the appropriate State or local authority" for purposes of § 2000a-3(c). *See Combs v. Cordish Cos., Inc.*, 2014 WL 4243640, at *3 (W.D. Mo. Aug. 26, 2014) (dismissing Title II discrimination case because plaintiff failed to satisfy § 2000a-3(c)'s notice requirement with the Missouri Human Rights Commission); *see also* Mo. Rev. Stat. §§ 213.030, 213.065, 213.075. The Eighth Circuit Court of Appeals has held that § 2000a-3(c)'s notice requirement implicates the Court's subject matter jurisdiction. *Bilello,* 374 F.3d at 659. As such, Plaintiff's Title II claim must be dismissed.

Although the Court finds that Plaintiff's Title II claim is subject to dismissal for lack of federal jurisdiction, the Court will hold the dismissal of the claim in abeyance until ruling on the remainder of the claims in Plaintiff's Second Amended Complaint.

**II.     Plaintiff must show cause as to the jurisdictional basis of his remaining claims.**

In its Order to Show Cause, Doc. [10], the Court found that Plaintiff had failed to sufficiently allege that more than $75,000 was in controversy. The Court explained that "the measure of damages recoverable for defective repairs of a . . . motor vehicle is the difference between the value of the vehicle in its defective condition and its value in the condition in which it would have been if the repairs had been properly performed, together with all other losses proximately resulting from the defective repair work." *Southwick v. Ace Auto Body Shop, Inc.*, 646 S.W.2d 401, 403-04 (Mo. Ct. App. 1983) (quoting 38 Am. Jur. 2d *Garages, Service Stations, and Parking Facilities* § 80 (1968)). Other methods for measuring damages from negligent repair of an automobile include "the difference between the value of the vehicle before and after defective repair; the difference between the amount paid for repairs and actual value of repairs or the amount necessary to complete the work; the cost of completing the repairs; and a

4

return of the amount paid." *Id.* While Plaintiff had attached copies of bills totaling around $8,000 to the Complaint, *see* Docs. [1-2], [1-4], [1-6], he had not alleged how the purported negligent repairs affected the fair market value of the truck or how it affected the sale of his truck. Doc. [10] at 4. The Court also pointed out that there was no indication that Plaintiff was entitled to claim emotional distress or punitive damages under Missouri law. *Id*. at 4-5.

Plaintiff was instructed to provide "some specific facts or evidence demonstrating that the jurisdictional amount has been met." *Hill v. Ford Motor Co.*, 324 F. Supp. 2d 1028, 1036 (E.D. Mo. 2004); *see Missouri ex rel. Pemiscot Cnty v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995) ("[W]hen a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but . . . the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence."). Rather than respond to the Order to Show Cause, Plaintiff filed the Second Amended Complaint, which still fails to establish diversity jurisdiction. Specifically, Plaintiff does not allege how long it took for Plaintiff's truck to be repaired such that he could legitimately claim lost wages; he also does not allege whether he was able to sell his Peterbilt semi-truck and trailer after the events described in the present suit, and if so, for how much.

Plaintiff admits in both the original Complaint and in the Second Amended Complaint, Docs. [1], [12], that the cost of repairs on his truck was approximately $8,000. He does not state how long it took for the repairs to be done, however, leaving the Court unable to assess his lost trucking wages as a result of the incidents described in the Complaint. Instead, he claims a loss of income of approximately $160,000 for a year's work, because he suffered from emotional distress and was unable to go back to work as a truck driver. But as noted in the Order to Show Cause, Plaintiff has not sufficiently alleged that he is entitled to damages for emotional distress. *See* Doc. [10] at 4 ("Plaintiff alleges in a conclusory manner that after December of 2022, he saw a 'Mental Health Provider' and was prescribed 'Mental Health Medications.'" (citing Doc. [1] at 5)). And to the extent that Plaintiff claims lost wages resulting from defective repair work, he can claim such damages for only the time his truck was out of service while it was being repaired. *See, e.g., Anderson v. Exxon Car Care Center, A Div. of Exxon Corp.,* 545 F. Supp. 406 (E.D. La. 1982) (awarding damages for lost earnings due to a negligent car repair).

Nor has Plaintiff properly alleged how the purported negligent repairs affected the sale or fair market value of the truck. Plaintiff alleges:

Mr. Carter was financing his truck that was to be paid in the amount of about $91,000.00

5

> within 42 months. Prior to the above incident, the truck was worth around $55,000.00. After the time of the above incident, the truck was worth around $0.00, considering the truck was not in service and Mr. Carter was not able to gain access to his truck, to around $49,000.00 surrounding around what it would take to get the repairs done, excluding the repairs itself. Please, note that Mr. Carter is claiming total loss of his truck, considering Mr. Carter was not never able to gain access to his truck due to the above matter. (Trailer total estimated at $30,000.00).

Doc. [12] at 6. In reviewing the exhibits attached to Plaintiff's initial Complaint, Doc. [1-1], Plaintiff included an invoice from JX Truck Center showing what appeared to be a sale listing for Plaintiff's truck. It thus appears that Plaintiff sold his truck through JX Truck Center or another sale center. In Plaintiff's Application to Proceed in the District Court without Prepaying Fees and Costs, Plaintiff stated that he is currently working as an Uber Driver, making less than $10,000 a year. Doc. [3]. If Plaintiff sold his truck and trailer and changed careers after the events described in the Second Amended Complaint, he may not claim both the full value of the truck and trailer and all lost wages from no longer acting as a truck driver.

The Court will allow Plaintiff twenty-one (21) days to state, in a response brief, whether he was able to sell his Peterbilt semi-truck and trailer, and if so, when he sold them and for how much money. He should also set forth in his brief how long it took for his truck to be repaired after the incident set forth in the Complaint and Second Amended Complaint. When the Court "questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *See Missouri ex rel. Pemiscot Cnty*, 51 F.3d at 173.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend/Correct the Records, Doc. [13], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must show cause within **twenty-one (21) days of the date of this Order** as to why this case should not be dismissed for lack of subject matter jurisdiction, as instructed herein. Failure to comply with this Order will result in the dismissal of this action without prejudice and without further notice.

Dated this 31st day of March, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

6